UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEARTBEAT OF MIAMI, INC.,

     Plaintiff,

 v.

JANE'S REVENGE, *et al.*,

     Defendants.

Case No. 8:23-cv-705-KKM-AAS

### DEFENDANTS' *UNOPPOSED* JOINT MOTION TO STAY THESE PROCEEDINGS PENDING THE OUTCOME OF THE PARALLEL CRIMINAL ACTION

With this Motion, Defendants seek to prevent the inevitable injustices that will arise should their civil and criminal cases be required to proceed simultaneously. The parties have found common ground here, as Plaintiff does not oppose the relief sought herein.

Defendants who have appeared in this matter, Annarella Rivera, Caleb Freestone, Amber Smith-Stewart, and Gabriella Oropesa (Defendants),[1] were charged by the United States for conspiracy and violation of 18 U.S.C. 248, the Freedom of Access to Clinic Entrances Act (FACE Act). Following the indictments, the Florida Attorney General and Plaintiff Heartbeat of Miami, Inc.,

---

[1] The Defendants who have appeared contest that this action was properly brought against them "as a representative of Jane's Revenge." "Jane's Revenge" has not been served.

sued Defendants for the same alleged conduct. A sister court in the Middle District of Florida has temporarily stayed the Attorney General's case, *Attorney General v. Freestone*, Case No. 8:23-cv-701-SDM-MRM (M.D. Fla.). (A copy of the order staying the Attorney General's lawsuit is attached as **Exhibit 1**.)

Defendants respectfully request that this Court exercise its discretion to enter a similar stay in this case until all criminal proceedings have ended. *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (when a plaintiff files a civil claim related to rulings that will likely be made in a pending criminal trial, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."). The Court's reasons for entering a stay in the Attorney General's case also apply here.

As grounds for this Motion, Defendants state as follows:

## I.    BACKGROUND

Defendants were indicted in this District for purportedly violating the FACE Act — which carries both civil and criminal penalties — for the same conduct alleged in this civil lawsuit. *United States v. Freestone, et al.*, Case No. 8:23-cr-25 (M.D. Fla.) ("Criminal Action").[2] The United States alleges in the Criminal Action that Defendants spray-painted Heartbeat's Hialeah facility, among other locations.

---

[2] Attached as **Exhibit 2** to this motion are the operative superseding indictments in the Criminal Action. Defendants respectfully request that the Court take judicial notice of Exhibit 2 and the docket entries in the Criminal Action. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271,

After the indictment, Plaintiff Heartbeat of Miami and the Florida Attorney General filed lawsuits against Defendants for the same alleged FACE Act violations central to the federal government's prosecution. Attorney General Ashley Moody made clear in her press release on the joint action that the criminal and civil cases were coordinated efforts: "Antifa and Jane's Revenge are criminal organizations and must answer for their crimes in Florida. I am taking action to hold their members accountable for attempting to intimidate and threaten law-abiding citizens in our state." Action Against Antifa and Jane's Revenge (Mar. 30, 2023), https://www.myfloridalegal.com/newsrelease/action-against-antifa-and-janes-revenge.

Heartbeat of Miami is a private actor. It is a nonprofit religious organization that is seeking relief for purported FACE Act violations under the individual right of action enumerated in 18 U.S.C. § 248(c). (*See generally,* Doc. 9, First Amended Complaint (FAC)). Under that private right of action, it has sued Defendants individually and in the representative capacity of an alleged "unincorporated criminal association" it refers to as "Jane's Revenge." FAC ¶¶ 12–13. Like the Florida Attorney General and the United States, Heartbeat of Miami asserts that Defendants have violated the FACE Act through intentional threats in connection

---

1278 (11th Cir. 1999) (court may take judicial notice of public filings "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n. 5 (11th Cir. 2014) (same).

with alleged spray-painting at Heartbeat's facility in Hialeah and by allegedly damaging its property (by shining a laser at a security camera) (Counts I & III) — all conduct alleged to have occurred outside this District.

According to the operative complaint, the Defendants' actions constituted threats and intimidation contemplated by the FACE Act because Heartbeat of Miami's Hialeah facility "provided reproductive health services." (FAC ¶¶ 26, 40, 50, 53, 70, 72–73, 86, 97). Heartbeat of Miami also alleges: interference with its annual fundraising gala, an alleged violation of the FACE Act (Count II); trespass at its facility and gala (Counts IV & V); a conspiracy, just as the United States alleges in its superseding indictment in the Criminal Action (Count VI); and finally, violations of Florida's civil RICO act (Counts VII & VIII).

Given the identical claims in the Florida Attorney General's lawsuit, Judge Merryday temporarily stayed that case for 90 days or until the Criminal Action ends, whichever occurs first, based on the then anticipated trial schedule in the Criminal Action.[3] *See* Ex. 1.

As explained below, except for claims related to Heartbeat of Miami's fundraising gala — which are not viable for reasons to be briefed at the appropriate stage — the claims asserted by Heartbeat of Miami are based on the same facts and elements as the United States' superseding criminal indictment. Because

---

[3] Since the entry of that order, the presiding judge in the Criminal Action has postponed trial until the November 2023 trial term. *See* Criminal Action, Doc. 127.

Defendants intend to invoke their Fifth Amendment privilege in these proceedings given the ongoing criminal proceedings, they respectfully request that the Court stay this matter pending the outcome of the Criminal Action. As noted above, Plaintiff does not oppose a stay.

## II.    MEMORANDUM OF LAW

Discovery and trial here would prejudice Defendants' Fifth Amendment rights to be free from defending against a civil proceeding while defending the Criminal Action. Although there are claims against certain Defendants for conduct at Heartbeat of Miami's gala, the crux of this lawsuit involves the identical conduct alleged under the FACE Act by the United States in superseding indictment in the Criminal Action — that Defendants engaged in a conspiracy and spray-painted several crisis pregnancy centers, including Heartbeat of Miami's crisis pregnancy center located within the Southern District of Florida.[4] Requests for production, requests for admission, depositions, and trial testimony in this civil case will inevitably seek to elicit evidence that Defendants engaged in the alleged illegal activity that is the subject of the Criminal Action. If not deferred, the civil proceeding will undermine the accused's Fifth Amendment privileges against self-incrimination, expand rights of discovery beyond the limits of Fed. R. Crim. P. 16,

---

[4] Defendants are contemporaneously filing a motion to transfer this case to the Southern District of Florida, which they believe is the proper venue for Heartbeat of Miami's claims.

and attempt to expose the bases of defense to the prosecution before the trial in the Criminal Action. On the other hand, viewing this from the Plaintiff's and the Court's perspective, civil discovery while the Criminal Action is pending would be frustrated because of Defendants' invocation of the Fifth Amendment.

### A. Legal Standard

To prevent prejudice to a defendant's rights under the Constitution and the rules of procedure, when a "civil action . . . is tied in a tight knot with a [potential] criminal prosecution," the clear practice in the circuits is to stay the civil action until after termination of the criminal matter. *Campbell v. Eastland*, 307 F.2d 478, 480 (5th Cir. 1962).[5] *See, e.g., Coney v. Anderson*, No. 8:22-CV-64-CEH-AAS, 2022 WL 419896, at *2 (M.D. Fla. Feb. 9, 2022) (when plaintiff would invoke the Fifth Amendment, and defendant police officer would invoke the law enforcement privilege, stay was warranted pending resolution of criminal matter); *Ventura v. Brosky*, 2006 WL 3392207, at *1-2 (S.D. Fla. Nov. 21, 2006) (staying and administratively closing civil case due to parallel criminal proceeding against defendant police department employee who would invoke his Fifth Amendment rights).

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Although courts have discretion to grant a stay of a civil case pending a criminal matter, in the interests of judicial efficiency or other factors, "[a] court *must* stay a civil proceeding pending resolution of a related criminal prosecution . . . when 'special circumstances' so require in the 'interest of justice.'" *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (civil forfeiture context) (citing *United States v. Kordel*, 397 U.S. 1, 90 S. Ct. 763, 769-70 & n. 27 (1970)) (emphasis added).

The Eleventh Circuit has not established a strict set of factors that district courts must employ when determining whether "special circumstances" are met. Even so, district courts in this Circuit have held that the most important consideration is "the similarity of issues in the underlying civil and criminal actions." *Lay v. Hixon*, 2009 WL 1357384, at *4 (S.D. Ala. May 12, 2009) (staying civil proceeding in light of pending criminal case with considerable factual overlap and presenting significant prejudice to moving party).

In resolving motions to stay, courts also routinely weigh the following secondary factors: the status of the case, including whether the defendants have been indicted; the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to plaintiffs caused by the delay; the private interests of and burden on the defendants, including the extent to which defendants' Fifth Amendment rights are implicated; the interests of the courts; and the public

interest. *Svistina v. Elbadramany*, No. 22-CV-20525, 2022 WL 1658840, at *2 (S.D. Fla. May 25, 2022); *Invs. v. Rothstein*, No. 10-60786-CIV, 2011 WL 2530945, at *1 (S.D. Fla. June 24, 2011); *Sec. & Exch. Comm'n v. Palleschi*, 2:21-CV-530-SPC-NPM, 2021 WL 4710773, at *1 (M.D. Fla. Sept. 24, 2021); *United States v. Uppal*, No. 8:22-CV-1622-TPB-JSS, 2023 WL 4033632, at *1 (M.D. Fla. May 26, 2023).

Each of these non-exhaustive factors is addressed in turn below. Just as in the Attorney General's sister action in this District, these factors weigh heavily for a stay of this proceeding until the Criminal Action against all the Defendants is resolved.

### 1.  Most of the claims completely overlap with the federal government's prosecution

As for the first — and arguably most important — factor, the Court should find that the equities favor a stay pending the outcome of the Criminal Action.

To begin this analysis, courts generally look to see whether an indictment or similar charging documents have been filed against the movant. *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1382 (S.D. Fla. 2015) (absence of an indictment weighs heavily against a stay). Here, the indictments in the Criminal Actions were filed before this civil lawsuit, and superseding indictments by the federal government preceded the Amended Complaint. Comparing the indictment to the operative pleading here — as Defendants detailed in Section I above — this

8

lawsuit stems from identical facts alleged in the superseding indictments in the Criminal Action (except for claims related to Heartbeat of Miami's gala): that Defendants allegedly spray-painted Heartbeat's facility in Hialeah — outside this District — and engaged in a conspiracy to spray-paint other facilities. There is not a mere potential of overlapping issues and facts. The FACE Act and conspiracy claims and the key operative facts underlying many of Heartbeat of Miami's claims here are the same or related to those asserted by the United States in its prosecution and involve the same analysis. *See*, *e.g.*, *Uppal*, 2023 WL 4033632, at *1 (Barber, J.) (although the "scope of [the civil] case is broader than that of the criminal prosecution, there is substantial overlap, which weighs strongly in favor of a stay").

The elements of the FACE Act and conspiracy claims are the same — both this lawsuit and the Criminal Action. These claims question whether Defendants "intentionally" damaged or destroyed the property of the facilities at issue in the two parallel cases, or "threatened" to intimidate the facilities' employees, and whether such alleged conduct at Heartbeat of Miami's facility and others constitutes a conspiracy. *Compare* FAC ¶¶ 59, 66, 72–73, 91, 95, 114 *with* Ex. 1. *Cf. Tompkins-Holmes v. Gualtieri,* No. 8:17-CV-52-T-33AEP, 2017 WL 638663, at *2 (M.D. Fla. Feb. 16, 2017) (stay not appropriate because the elements in the civil case and criminal cases were different).

9

Although the individual FACE Act violations in the superseding indictments pertain only to a facility in Winter Haven, *see* Ex. 1 at Counts II and III, the conspiracy asserted in the federal indictments touch on several facilities, including Heartbeat of Miami's Hialeah facility (called "Facility C" in the indictment), *see id.* at Count I. The superseding indictment and this lawsuit both allege that Heartbeat of Miami's Hialeah facility was "damaged and destroyed" by "spray painting threats of force and other intimidating messages on the property of the facilities, in order to injure, oppress, threaten, and intimidate the employees of those facilities . . ." in violation of the FACE Act. *Id.* at 2. *Compare* FAC ¶¶ 113–14(a).

As for the other claims raised by Heartbeat of Miami related to the conduct alleged in the indictment — Florida civil RICO and trespass — the analysis remains the same. For example, Heartbeat of Miami's racketeering claim is essentially a mirror of its (and the federal government's) conspiracy claim. There, it asserts that Defendants are guilty of racketeering because they allegedly spray-painted the Hialeah facility and the other facilities named in the indictment. (FAC ¶¶ 128–31, 147-49). Moreover, Heartbeat of Miami asserts that the Defendants' "intent" for the alleged pattern of conduct was "to injure, intimidate, or interfere with" the facilities' operations. (*Id.* at ¶¶ 132, 151). That is the same requisite intent asserted in the superseding indictment. *See* Ex. 1. *See* 18 U.S.C. § 248(a);

*Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002) (citing *United States v. White*, 893 F. Supp. 1423, 1427 (C.D. Cal. 1995)).

Further, for the claims of trespassing at the Hialeah facility, those civil claims would certainly implicate Defendants' Fifth Amendment privilege even if there is no such intent requirement under Florida law. And finally, for the claims related to Heartbeat of Miami's off-site gala, the fact that there are some additional claims outside the conduct asserted in the indictment does  not militate in favor of denying a stay or allowing Heartbeat of Miami to litigate this case piecemeal until the Criminal Action ends. *See Uppal*, 2023 WL 4033632, at *1.

 For all these reasons, Court should find that the first factor weighs heavily in favor of a stay.

**2.  This case is in its infancy**

The second factor also supports a stay. This case is in its infancy. The parties have only recently been served or have waived service, and to date no responsive pleadings have been filed. *See Svistina*, 2022 WL 1658840, at *5 (second factor weighed in favor of stay because the case was only three months old, and a stay would be "the most effective use of judicial resources").

**3.  The prejudice to Defendants outweighs Heartbeat of Miami's private interests, and a stay benefits the public interest**

The parties' and public's interests also favor a stay pending the outcome of the Criminal Action.

Heartbeat of Miami seeks injunctive relief preventing Defendants from intimidating its staff or interfering with its operations, damaging its property, or going within one hundred feet of its facilities. (FAC, Prayer for Relief). Heartbeat of Miami also seeks monetary damages against Defendants. (*Id.*). As explained below, a stay of these proceedings would present minimal harm or burden on Heartbeat of Miami, while failure to stay this matter would eviscerate Defendants' rights through a summary judgment if they testify in this action while the Criminal Action is pending. The public interest is also outweighed by Defendants' prejudice in having to defend this case concurrently with the Criminal Actions. *See Doe 1 v. City of Demopolis*, No. CIV A 09-0329-WS-N, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009) (judicial economy benefits the public interest).

### i.       Defendants would be prejudiced without a stay

Here, Defendants would face extreme prejudice in being "forced to choose between waiving [their] privilege against self-incrimination or losing the civil case in summary proceedings." *Shell Oil Co. v. Altina Associates, Inc*., 866 F.Supp. 536, 540 (M.D. Fla. 1994) (quoting *Pervis v. State Farm Fire and Cas. Co.*, 901 F.2d 944 (11th Cir. 1990)). Plaintiff alleges that Defendants sprayed graffiti on several facilities — allegations that are the central facts here and in the Criminal Action. To their counsels' knowledge, besides Defendants there are no other witnesses who can provide exculpatory evidence. Therefore, unlike some other

situations in which there is other evidence (such as video or eyewitnesses),[6] without a stay, Defendants face the possible unjust outcome of entry of summary judgment against them following invocation of their Fifth Amendment privileges. *See Baxter v. Palmigiano*, 425 U.S. 308, 317-19 (1976) (adverse inferences may be drawn against parties to a civil action as a result of their assertion of the Fifth Amendment privilege); *United States v. A Single Fam. Residence & Real Prop.*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986) (general rule is that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."). Courts have granted a stay pending resolution of a criminal case where the only eyewitnesses capable of providing exculpatory testimony in the civil proceeding were the defendants, who would invoke their Fifth Amendment privilege. *Gonzalez v. Israel*, No. 15-CIV-60060, 2015 WL 4164772, at *3 (S.D. Fla. July 9, 2015); *cf. Tompkins-Holmes*, 2017 WL 638662, at *2 (denying a motion to stay because movant failed "to explain why the defendants cannot rely on other testimony or evidence" if they invoked their Fifth Amendment privilege).

---

[6] Although Heartbeat of Miami provides a link in the FAC to surveillance footage, it renders the conclusory allegation that "two Defendants" are shown. (FAC ¶ 36 n.7). That allegation alone is impermissible, and the purported evidence is not inculpatory or exculpatory given that Heartbeat of Miami has not even identified who it believes are depicted in the footage. *Davis v. Staramba Corp.*, No. 8:15-CV-1936-T-36MAP, 2015 WL 12838807, at *2 (M.D. Fla. Nov. 6, 2015) (no "fair notice" when allegations refer to "Defendant" or "Defendants" without identifying the specific individual or combination of defendants to which the allegation pertains).

In *Gonzalez v. Israel*, the court granted a stay where there were parallel criminal and civil proceedings because, among other reasons, the only eyewitnesses capable of providing exculpatory testimony in the civil proceeding were the defendants, who would invoke their Fifth Amendment privilege. 2015 WL 4164772, at *3. There, the plaintiff sued several Broward Sheriff's Office deputies and Sheriff Israel, in his official capacity, for their conduct related to claims of excessive force and falsified police reports. *Id.* at *1. There, the deputies were criminally charged with falsification of records and battery. *Id.* The court looked to the operative complaint in that case to determine whether the deputies' Fifth Amendment invocation as to facts surrounding the charged acts would result in an unrebutted account of those facts. Specifically, the court found that the pleadings supported that those deputies "appear[ed] to be the only eyewitnesses to their interaction with Plaintiff potentially capable of providing exculpatory testimony in support of their defense." *Id.* at * 3. The allegations in the operative complaint here similarly support that the Defendants are the only alleged eyewitnesses to the alleged graffiti. *See* FAC. No other persons are identified, and no potential sources of exculpatory evidence are addressed. *Id*.

Beyond that, Defendants are charged with conspiracy in the Criminal Action, *see* Ex. 1, providing each of them with even broader Fifth Amendment rights regarding a wide range of subject matter, including testimony about the other

14

codefendants' actions. *See, e.g., United States v. Metz*, 608 F.2d 147, 157 (5th Cir. 1979); *United States v. Aviles*, 749 F. App'x 263 (5th Cir. 2018). In contrast, were Defendants to participate by testifying and producing documents in defending this case, those statements and evidence could be used in the Criminal Action. *See U.S. v. White*, 846 F.2d 678, 689 (11th Cir. 1998) (discussing how civil deposition transcripts were shared with DOJ, spurring adverse criminal action against the defendants).[7] That decision could subject Defendants to loss of liberty.

Finally, although there are witnesses to the alleged disruption of Heartbeat of Miami's gala, the factual underpinnings are so intertwined with the other claims that Defendants would be forced to assert their Fifth Amendment privilege to avoid waiving it. The nature of the conspiracy indictment means facts suggesting a joint venture among Defendants would support an inference of conspiracy in the criminal case. Even if the instant proceedings were somehow bifurcated, or if the criminal proceedings were to conclude before a trial here, Defendants would be placed in an impossible position of navigating when and how to assert their Fifth Amendment privilege. *See SEC v. Zimmerman,* 854 F. Supp. 896, 899 (N.D.

---

[7] The federal government's right of discovery in a criminal case is much more limited than the criminal defendant's right of discovery. *See* Fed. R. Crim. P. 16; *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 218CV01479KOBHNJ, 2019 WL 8014315, at *5 (N.D. Ala. Oct. 30, 2019) (parallel criminal and civil cases may undermine Fifth Amendment privilege "by expanding rights of criminal discovery beyond the limits" of the federal criminal rules, "by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means") (quoting *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 400 (S.D. Tex. 2009)).

Ga.1993) ("Fifth Amendment privilege cannot be invoked to oppose discovery and then tossed aside to support a party's assertions"). Here, Defendants intend to invoke their Fifth Amendment privilege. For that reason, the equities justify a stay.

### ii.    The interests of justice and judicial economy require a stay

Even if the Court found that the preceding factors weighed  against a stay, the interests of justice otherwise support a stay, tipping the scale in Defendants' favor. *See United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1990) (collecting cases in which "[f]ederal courts deferred civil proceedings pending completion of parallel criminal prosecutions when the interests of justice seemed to require such action"); *United States ex rel. McFarland v. Fla. Pharmacy Sols*., No. 8:15-CV-1708-T-23TGW, 2017 WL 10294799, at *1 (M.D. Fla. Aug. 7, 2017) (Merryday, J.). The Court's power to stay cases is part of its inherent authority "to control the disposition of the case on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. North Am. Co*., 299 U.S. 248, 254(1936).

As a sister court recently noted, "[a]lthough the Constitution does not require a stay of these civil proceedings pending the outcome of the related criminal matter, the Court, in exercising its discretion, f[ound] that a stay [wa]s warranted in the interests of judicial efficiency and economy." *Matter of James Gang Charters, LLC*, No. 8:20-CV-1859-CEH-JSS, 2021 WL 2228659, at *2 (M.D. Fla. May 10, 2021). By that inherent authority, "[c]ertainly . . . a court may

16

stay a civil proceeding during the pendency of a parallel criminal proceeding." *U.S. v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983). Indeed, the courts recognize that a stay is most appropriately entered when a civil suit in a parallel case would threaten to disrupt the restrictions imposed on discovery by the criminal rules:

> In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters . . . a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive.

*Campbell*, 307 F.2d at 487.

Forcing a defendant to admit or deny civil allegations that are the subject of a criminal prosecution conflicts with the structure of a criminal case, in which the defendant is presumed innocent and the government must satisfy the most exacting burden of proof. Heartbeat of Miami should not have a chance to leverage the liberal rules of civil discovery to help the federal government build a criminal case against Defendants when their liberty is on the line in parallel Criminal Action.

To deny a stay would create precisely the type of prejudice to substantial rights of a presumptively innocent party that the courts recognized in the *Campbell* case. As this Court stated in analyzing *Campbell*, a "defendant who reasonably fears a criminal prosecution maintains a weighty Fifth Amendment interest against compelled self-incrimination, including self-incrimination that results from a statement compelled in a civil action." *McFarland*, 2017 WL 10294799, at *1

(Merryday, J.) (citing *Erwin v. Price*, 778 F.2d 668, 669 (11th Cir. 1985)). *See also* *Wehling v. Columbia Broad. Sys.,* 608 F.2d 1084 (5th Cir. 1979) (finding abuse of discretion to deny a "three-year hiatus" until all threat of criminal liability ended). Defendants face "a Hobson's choice: either waive the Fifth Amendment right against compulsory self-incrimination and defend this civil action or invoke the Fifth Amendment and lose this civil action on summary judgment." *McFarland*, 2017 WL 10294799, at \*1.

In *McFarland*, a sister court found that the "interests of justice" favored a stay because the Fifth Amendment protection against compelled self-incrimination outweighed the speculative and marginal harms of delay. *McFarland*, 2017 WL 10294799, at \*2. Here, Heartbeat of Miami seeks to have Defendants enjoined from coming near its personnel and facilities, and it seeks damages, among other things. (*See, generally,* FAC). Defendants are already prohibited by court orders in the Criminal Actions from having any contact with victims or witnesses, which would include Heartbeat of Miami staff members. *See, e.g.*, Criminal Action, Docs. 13, 14, 70.[8] So long as the Criminal Actions are prosecuted, Defendants are essentially enjoined, so Heartbeat of Miami faces no additional harm related to a stay.

---

[8] Further, the conditions of bond prevent Mr. Freestone from traveling to this District during the pendency of the Criminal Action. *See* Ex. 3.

As for Heartbeat of Miami's damages claims, to the extent they can be proven or that Heartbeat of Miami has standing to pursue them, a short delay should not outweigh Defendants' fundamental rights. Heartbeat of Miami stands to endure only minor, speculative harm, if any, at the cost of Defendants' liberty interests and virtually certain adverse disposition. The Court should find for Defendants and stay these proceedings pending the outcome of the Criminal Action.

### iii.      The public interest would be served by a stay

Moreover, a stay of this proceeding would serve the public interest in promoting judicial economy. Heartbeat of Miami's ability to protect its interests will not be harmed by a stay of this proceeding. Defendants are all under pretrial supervision, which strictly limits their contact with any alleged witnesses or victims in the cases and forbids any illegal conduct of any kind. *See, e.g.*, Ex. 3. The alleged criminal activity is not ongoing. Ex. 1. No evidence will be lost or destroyed due to the imposition of a stay order, as discovery is already underway in the Criminal Action and all defendants in this civil lawsuit have a duty to preserve relevant evidence. *See Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020).

On the other hand, should this action continue while the Criminal Action is ongoing, these proceedings will be unnecessarily multiplied by the Defendants' invocations and resistance to discovery on Fifth Amendment grounds — prolonging the case and increasing the litigation costs and judicial labor. Further, it is possible that Heartbeat of Miami's discovery efforts may frustrate the federal government's prosecutions. *Palleschi*, 2021 WL 4710773, at *2 (granting intervenor-government's request for a stay to avoid "hamper[ing]" the government's prosecution; public has a strong interest in cases being resolved without interfering with one another); *Uppal*, 2023 WL 4033632, at *1 ("resolution of criminal case may help to resolve this case in whole or party, thereby promoting the interest of judicial economy"). A stay is appropriate under these circumstances.

### 4.  The outcome of the Criminal Action may narrow the issues

Finally, the Court should find that a stay is warranted because the resolution of the Criminal Action may narrow and simplify the issues to streamline the discovery and trial of this matter. In *Transamerica Life Ins. Co. v. Brickman*, No. 6:15-CV-1919-ORL-41TBS, 2017 WL 10023751, at *4 (M.D. Fla. Oct. 17, 2017), the court found that this factor weighed in favor of stay for two reasons. *First*, judicial economy weighed in favor of granting a stay where the criminal trial would have a preclusive effect on the civil case. *Id.* (citing *City of Demopolis*, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009)). *Second*, in the event of a not guilty

verdict in the criminal case, "the civil proceedings would be expedited because of the overlapping factual issues and likelihood that the evidence from the criminal trial would be available for use in this case." *Id.*

In short, allowing the federal government to complete its prosecution efforts against Defendants will ensure a likelihood of streamlining these proceedings and helping the parties evaluate the positions. *See*, *e.g.*, *Palleschi*, 2021 WL 4710773, at *2 (civil case continued where, among other things, resolution of the criminal case would likely streamline the issues in the civil case). The Court should use its inherent power to stay this case to promote judicial economy and prevent Defendants from having to choose between defending this case and the criminal jeopardy associated with any waiver of his Fifth Amendment privilege.

## III.   CONCLUSION

Defendants respectfully request that the Court grant this unopposed motion and stay this case pending the outcome of the Criminal Action.

### Local Rule 3.01(g) Certification

Undersigned counsel has communicated with Plaintiff's counsel on July 5, 2023 by email in a good faith effort to resolve the issues raised in this motion. Plaintiff does not oppose the relief requested herein.

Dated: July 12, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023
*Lead Counsel for Caleb Freestone*

*/s/ Marianne Dugan*
Marianne Dugan* (*pro hac vice*)
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette Street, Suite 301 # 359
Eugene, Oregon 97401
Tel. (541) 687-9180
mdugan@cldc.org
*Lead Counsel for Amber Smith-Stewart*

*/s/ Andrea Costello*
Andrea Costello* (FBN 0532991)
FLORIDA LEGAL SERVICES
P.O. Box 533986
Orlando, Florida 32853
Tel. (407) 801-0332
andrea@floridalegal.org
*Lead Counsel for Annarella Rivera*

*/s/ Miriam Haskell*
Miriam Haskell* (FBN 069033)
Carrie Joanna Feit (FBN 470066)
COMMUNITY JUSTICE PROJECT
3000 Biscayne Blvd., Suite 106
Miami, Florida 33137
Tel. (305) 907-7697
miriam@communityjusticeproject.com
carrie@communityjusticeproject.com
*Lead Counsel for Gabriella Oropesa*