UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEARTBEAT OF MIAMI,

    Plaintiff,

v.                                                                              Case No. 8:23-cv-0705-KKM-AAS

JANE'S REVENGE, et al.,

    Defendants.
_____

## ORDER

Defendants Caleb Freestone, Amber Smith-Stewart, Annarella Rivera, and Gabriella Oropesa (defendants)[1] move to transfer this case from the Middle District of Florida to the Southern District of Florida under 28 U.S.C. § 1404 and Local Rule 1.04(b) (Doc. 54). Defendants also move to stay this case pending resolution of a related criminal action, *United States v. Freestone*, 8:23-cr-25-VMC-AEP (M.D. Fla.) (Doc. 53). Plaintiff Heartbeat of Miami opposes the request to transfer, (Doc. 57), but consents to the request for a stay, (Doc. 56). Because defendants have not shown that the transfer factors clearly outweigh Heartbeat of Miami's choice of forum, the motion to transfer is denied. But I grant the motion to stay, in part.

---

[1] The amended complaint also brings claims against Jane Does and the allegedly unincorporated, criminal enterprise referred to as Jane's Revenge.

I.  BACKGROUND

Prior to Heartbeat of Miami commencing this action, each of the individual defendants were indicted in the Middle District of Florida under the Freedom of Access to Clinic Entrances (FACE) Act, 18 U.S.C. § 248, in the related criminal action. Superseding Indictment, *United States v. Freestone, et al.*, 8:23-cr-25-VMC-AEP (M.D. Fla. Mar. 22, 2023); Superseding Indictment (Doc. 53-2). Defendants also were sued in the Middle District of Florida in a parallel civil action under the FACE Act brought by the Attorney General of Florida. *See Att'y Gen. v. Freestone*, 8:23-cv-701-SDM-MRM (M.D. Fla.). With minor differences, the three cases concern the same factual allegations, as described below.

Heartbeat of Miami brings this action against defendants seeking injunctive and monetary relief for "attacking life-affirming reproductive healthcare facilities," including Heartbeat of Miami's facility, following the Supreme Court's opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022). Am. Compl. ¶¶ 1–2, 27–28. Defendants allegedly "attacked one of Heartbeat's reproductive healthcare facilities in Hialeah, Florida" on July 3, 2022, by "unlawfully enter[ing] Heartbeat's property, damag[ing] its security camera, and threaten[ing] the lives and safety of Heartbeat and its staff and volunteers by spray-painting that '[i]f abortions aren't safe the [sic] neither are you' and that Defendants' 'rage will not [s]top.'" *Id.* at 3. Defendants also allegedly

interfered with Heartbeat of Miami's annual fundraising gala in September 2022 by "hack[ing] into Heartbeat's registration for its Gala," adding themselves to the guest list, and then "shouting obscenities and disparaging language" concerning Heartbeat of Miami and its mission during the event.[2] *Id.* at 50–51. Defendants have also allegedly targeted in similar fashion other life-affirming healthcare facilities in Winter Haven and Hollywood, Florida. *Id.* at 29–35, 59. The alleged vandalization of the facility in Winter Haven forms the centerpiece of the Superseding Indictment in the related criminal action, *see* Superseding Indictment at 3–4, and the Attorney General likewise places importance (albeit not exclusive focus like the federal government) on the alleged conduct concerning the Winter Haven facility, *see generally* Complaint, *Att'y Gen. v. Freestone*, 8:23-cv-701-SDM-MRM (M.D. Fla. Mar. 29, 2023).

Based on these factual allegations, Heartbeat of Miami brings eight claims against defendants for violations of the FACE Act and the Florida Racketeer Influenced and Corrupt Organization (RICO) Act, and for common law torts of trespass and civil conspiracy. Am. Compl. ¶¶ 65–155.

---

[2] The factual allegations concerning Heartbeat of Miami's fundraising gala are not alleged in the Superseding Indictment nor are they included in the parallel civil action brought by the Attorney General. *See* Mot. to Stay at 4 ("[E]xcept for claims related to Heartbeat of Miami's fundraising gala . . . the claims asserted by Heartbeat of Miami are based on the same facts and elements as the United States' superseding criminal indictment."); *see generally* Complaint, *Att'y Gen. v. Freestone*, 8:23-cv-701-SDM-MRM (M.D. Fla. Mar. 29, 2023).

## II. TRANSFER

Defendants claim that transfer is appropriate to the Southern District of Florida because many relevant people and places are located there, including Heartbeat of Miami's place of business, some of the individual defendants, the bulk of the evidence, and many witnesses. Mot. to Transfer at 2, 6–16. Heartbeat of Miami opposes the motion and contends that defendants' motives in seeking transfer are not "a genuine concern about party convenience" but instead an improper attempt at forum shopping. Pl.'s Resp. in Opp'n at 3. Defendants' motives aside, they have not shown that convenience factors clearly outweigh Heartbeat of Miami's choice of forum. For that reason, the motion to transfer is denied.

### A. Legal Standard

Title 28, United States Code, Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612,

622 (1964)). In essence, Congress authorizes a district court to transfer an action to another district or division if certain criteria are satisfied.

First, the transferee venue must be a "district or division where [the case] might have been brought," meaning it must have personal and subject matter jurisdiction and offer a proper venue. 28 U.S.C. § 1404(a); *see Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960) (determining that transfer under § 1404(a) is only appropriate to a jurisdiction where it could be transferred without requiring defendant's consent to personal jurisdiction or venue).

Second, a court must determine whether transfer is appropriate in the interests of convenience and justice by weighing, at least, the following general factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Of particular importance is "[t]he plaintiff's choice of forum," which "should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v.*

*Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)).

### B. Analysis

Neither side disputes that Heartbeat of Miami could have brought this action in the Southern District, and I agree. Mot. to Transfer at 6; Resp. at 8. If personal jurisdiction exists in the Middle District, it also exists in the Southern District. And the Southern District would likewise have subject matter jurisdiction over the federal questions presented and supplemental jurisdiction over the state law claims. *See Am.* Compl. ¶ 4; 28 U.S.C. §§ 1331, 1367. Venue would also be proper there, as at least one defendant is domiciled there, Mot. to Transfer at 10, and many of the factual allegations underpinning the claims occurred in the Southern District, *see, e.g.,* Am. Compl. ¶¶ 3, 44, 59. Therefore, I may transfer the case if the *Manuel* factors, on balance, favor the Southern District.

1. Factors One and Five

Defendants have not met their burden of showing that factors one and five—the convenience of and ability to compel witnesses[3]—favor transfer. Defendants' main contention regarding these two factors is that Heartbeat of Miami's employees will be inconvenienced by trial in Tampa and that Heartbeat of Miami "is better able to procure

---

[3] Though defendants discuss party and nonparty witnesses in the same section, I only discuss nonparty witnesses here, and the convenience of the parties in the third section.

6

the attendance of its corporate-controlled witnesses such as current or former employees in the Southern District who would need to testify." Mot. to Transfer at 11, 13. For two reasons, I find this argument lacking.

First, Heartbeat of Miami remains in the superior position to evaluate whether its employees will be inconvenienced or whether it will struggle to procure their testimony at trial. Heartbeat of Miami does not complain of either and opposes defendants' motion on both grounds. And, of course, where witnesses are employees of a party, that party can compel their attendance and testimony at trial. *Wall v. Florida*, No. 8:22-cv-664, 2022 WL 4134579, at *3 (M.D. Fla. Sept. 12, 2022) (Mizelle, J.); *Delorenzo v. HP Enter. Servs., LLC,* 79 F. Supp. 3d 1277, 1283 (M.D. Fla. 2015) (Merryday, J.) ("The significance of [Factor (1)] is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party.").

Second, defendants do not point to specific witnesses or what testimony those witnesses would provide, so I cannot assess the materiality of the witnesses' testimony before determining whether factor one favors transfer. *See Wall*, 2022 WL 4134579, at *3; *see also Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243 (M.D. Fla. 2016) (Howard, J.) ("A general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be, does not merit transfer." (internal quotation and alteration marks omitted)); *Fed.*

*Prac. & Proc.* § 3851 ("The party seeking the transfer must identify, typically by affidavit, the key witnesses to be called, state their residence, and provide at least a general summary of what their testimony will cover."). Defendants also do not allege that witnesses will be unwilling to testify in the Middle District such that compulsory process would be necessary. *E.g.*, *J.I. Kislak Mortg. Corp. v. Conn. Bank & Trust Co.*, 604 F. Supp. 346, 348 (S.D. Fla. 1985) (Spellman, J.).

Thus, factors one and five do not favor transfer.

2.  Factor Two

Defendants contend that the second factor—the location of relevant documents and the relative ease of access to sources of proof—also favors transfer. While conceding that the location of documents is generally neutral because much of the discovery can be transmitted electronically, they point out that any inspection under Rule 34, such as Heartbeat of Miami's allegedly damaged facility or the hotel where the gala took place, must occur in the Southern District. Mot. to Transfer 12–13. That hardly warrants transfer, as that sort of inspection regularly transpires without court intervention. Factor two is designed to consider whether transfer of documents and evidence *to court* will be unnecessarily burdensome. *See e.g.*, *Fed. Prac. & Proc.* § 3853 (noting that this factor is considered because "[t]ransporting hard copies to a distant court [is] often cumbersome and expensive"); *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*,

8

761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (Wilson, Mag. J.) ("This factor examines the location of sources . . . and the ease with which the parties can transport them to trial."). As defendants admit, most discovery will occur electronically. Thus, factor two is neutral.

    3. Factors Three and Six

Defendants next contend that the convenience of the parties and their relative means favor transfer. As a threshold matter, Heartbeat of Miami disagrees with defendants' concerns raised on its behalf about litigating in the Middle District so those arguments hardly favor transfer. *See Wall*, 2022 WL 4134579, at *4 ("Given that [Defendants] are far better suited to analyze the convenience to themselves" and "unequivocally oppose transfer," their convenience and means do not support transfer.).

On the merits, I disagree. Two of the four defendants reside in the Southern District, and the other two defendants reside in the Middle District. Mot. to Transfer at 10, 10 n.6. That equipoise does not favor transfer. Defendants argue that at least one of the defendants residing in the Southern District "is prohibited by Court order from leaving Miami-Dade and Broward Counties except for court in the criminal proceedings." Mot. to Transfer at 10–11. Although true, that defendant would almost certainly succeed in getting permission to attend court in the Middle District for this civil action. This point is not persuasive for another reason: a different defendant is under court order to remain in the Middle District and cannot travel to the Southern District without court approval. *See*

9

*id.* at 10 n. 6; Motion to Modify Conditions and Related Order, *United States v. Freestone, et al.*, 8:23-cr-25-VMC-AEP (M.D. Fla. Apr. 6, 2023). Thus, some defendant will inevitably need to seek court approval to travel to defend against this civil action while the criminal proceeding is pending.

Finally as to the convenience of the parties, one must bear in mind the geographic realities between the two districts, which border one another. This is not a situation where transfer would alleviate the burden of parties needing to fly across the country for court proceedings.

Defendants also fail to show how the means of the parties favors transfer. Although defendants have appointed counsel in the criminal proceedings, "[t]hey are represented by non-profit and public interest solo practitioner law firms [here] that are not charging for their services." Mot. to Transfer at 14. As a result, defendants face no increased legal fees because this case is in the Middle District as opposed to the Southern District. *See Wall*, 2022 WL 4134579, at *4 (noting that inmate with appointed counsel failed to show anything "about his limited financial means that would force him to forgo his . . . challenge if it remained in Tampa"). And "it seems to be well-established that inconvenience to counsel is not a factor to be considered in determining whether or not a case should be transferred under 28 U.S.C. § 1404(a)." *Poncy v. Johnson & Johnson*, 414 F. Supp. 551,

558 (S.D. Fla. 1976) (King, J); *Ferri v. Del Medico*, No. 8:12-cv-2850, 2013 WL 12156114 at *4 (M.D. Fla. May 21, 2013) (Scriven, J.).

Because defendants are split between residing in the Middle District and Southern District (and Heartbeat of Miami opposes transfer), I treat factors three and six as neutral.

### 4. Factor Four

The defendants' primary contention is that factor four—the locus of operative facts—"resoundingly" favors transfer. Mot. to Transfer at 8. I agree, albeit less vigorously.

Many of the factual allegations giving rise to Heartbeat of Miami's claims occurred in the Southern District. *See* Mot. to Transfer at 8–10 (detailing allegations of defendants' trespassing and vandalizing behavior in Hialeah and defendants' disruptive and trespassing behavior at the fundraising event in Miami). But not all of them. Importantly, Heartbeat of Miami focuses on allegations related to an incident that occurred in Winter Haven, which is in the Middle District. Pl.'s Resp. in Opp'n at 12. Specifically, Heartbeat of Miami alleges that two of the individual defendants "spray-paint[ed] threatening messages on Facility B" in Winter Haven, which forms one of the alleged unlawful acts supporting the allegations of a criminal enterprise for Heartbeat of Miami's RICO claims. Am. Compl. Counts Seven and Eight, ¶¶ 128–31, 147–50; Pl.'s Resp. in Opp'n at 12. The alleged vandalization of the facility in Winter Haven is the same conduct for which the grand jury indicted the defendants here in the Middle District. Superseding Indictment at 3–4. And

it likewise constitutes a central aspect of the Attorney General's civil action. Thus, it is hardly surprising that Heartbeat of Miami followed the federal government's and Florida's lead by filing its civil action here in the Middle District too.

Because many of the allegations directly related to Heartbeat of Miami took place in the Southern District, factor four slightly favors transfer. But only slightly. Heartbeat of Miami represents that a "substantial part of the events giving rise to this action occurred in Polk County." Am. Compl. ¶ 10. Because Heartbeat of Miami brings RICO and conspiracy claims that it will try to prove through unlawful acts, it is in the best position to evaluate at this stage whether the Winter Haven incident or other events occurring within the Middle District will feature heavily in this case. Thus, although factor four slightly favors transfer, it is not dispositive of the transfer question. *See Jacques v. Jacques*, No. 8:16-CV-1297-T-33TGW, 2016 WL 6493927, at *4 (M.D. Fla. Nov. 2, 2016) (Covington, J.).

     5.  Factor Seven

The parties agree (and so do I) that the forum's familiarity with governing law is neutral because both forums have equal familiarity with both Florida and federal law. Mot. to Transfer at 14; Resp. at 14.


6. Factor Eight

Defendants argue that Heartbeat of Miami's choice of venue preference—the eighth factor—"is entitled to little or no deference" when other factors weigh against it. Mot. to Transfer at 14. For support, defendants point to several district court cases concluding that, when a plaintiff does not reside in its chosen venue or when the operative facts did not occur in that venue, the plaintiff's choice of forum is given less weight. *Id.* at 14–15 (citing *Delorenzo*, 79 F. Supp. 3d at 1283; *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259 (S.D. Fla. 2013) (Land, J.); *Polyform A.G.P. Inc. v. Airlite Plastics Co.*, No. 4:10-CV-43, 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2010) (Land, J.)).

This articulation of the eighth factor strikes me as inconsistent with Eleventh Circuit precedent, which holds that a "plaintiff's choice of forum should not be disturbed unless it is *clearly outweighed* by other considerations." *Robinson*, 74 F.3d at 260 (emphasis added) (citing *Howell*, 650 F.2d at 616); *see also Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) ("A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States."); *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101–03 (11th Cir. 2004) (reversing a district court for failing to afford any deference whatsoever to the plaintiff's choice of

forum). Further, defendants' view gives double deference to considerations already accounted for, such as the locus of the operative facts.

Here, Heartbeat of Miami prefers the Middle District, and precedent requires that I assign that preference significant weight. Thus factor eight weighs in favor of denying the motion to transfer.

### 7.  Factor Nine

Finally, defendants argue that considerations of trial efficiency and the interests of justice weigh in favor of transfer for the same reasons that defendants argue factors one and four favor transfer. Mot. to Transfer at 15-16. I disagree for the same reasons I have already explained. Moreover, I agree with Heartbeat of Miami that efficiencies could be gained by all three related actions—brought against the same individual defendants premised on substantially the same conduct—proceeding in the Middle District. Pl.'s Resp. in Opp'n at 2–3, 15.

\* \* \*

In sum, weighing the totality of the § 1404(a) factors, Heartbeat of Miami's venue preference weighs against transfer and only the locus of operative facts weighs slightly in favor of transfer. All the other factors are indifferent to transfer. They thus do not, in the aggregate, "clearly outweigh" Heartbeat of Miami's choice of venue and, as a result, defendants fail to establish that transfer is warranted.

III. **STAY**

Defendants also request the Court to stay this case "until all criminal proceedings have ended" in the Criminal Action. Mot. to Stay at 2. Heartbeat of Miami does not oppose this request. Pl.'s Resp. at 2.

Although not entirely clear in the caselaw, it seems that two rules govern the stay of a civil action pending a related criminal action. First, courts *must* stay a civil proceeding when a contemporaneous criminal action effectively prevents a defendant from offering probative evidence in defense of the civil proceeding and inevitably results in an adverse civil judgment because the defendant invoked the Fifth Amendment privilege against self-incrimination. *United States v. Lot 5*, 23 F. 3d 359, 364 (11th Cir. 1994). This first rule requires that a defendant's reasonable invocation of the Fifth Amendment disables his civil defense and directly results in an adverse judgment because defendant cannot produce other comparable evidence to substantiate his defense. *See* Order at 2–3, *Att'y Gen. v. Freestone*, 8:23-cv-701-SDM-MRM (M.D. Fla. June 5, 2023).

Second, a discretionary stay might be warranted if a defendant's Fifth Amendment rights are importantly endangered and other compelling factors recommend a stay. *See Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) (instructing courts to consider the extent to which the parties and issues in a civil

action and parallel criminal action overlap);[4] *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970). A federal court should consider the effects of a stay, including whether important public and private resources are compromised, whether the public's interest is adversely impacted to an unreasonable extent, whether the civil and criminal actions concern the same legal or factual issues, whether invocation of the Fifth Amendment right creates an unfair inference, whether convenient for the court in the management of its cases, and whether discovery in the civil action will hamper the government's prosecution of the criminal action. *See, e.g., S.E.C. v. Palleschi*, No. 2:21-CV-530-SPC-NPM, 2021 WL 4710773, at *1-2 (M.D. Fla. Sept. 24, 2021) (Chappell, J.). But "a blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *S.E.C. v. Wright*, 261 F. App'x 259, 263 (11th Cir. 2008) (per curiam). Further, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases" and should use "[j]udicial discretion and flexibility . . . to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Campbell*, 307 F.2d at 487.

---

[4] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to the close of business on September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Defendants argue that a stay is warranted because "[d]iscovery and trial here would prejudice Defendants' Fifth Amendment rights to be free from defending against a civil proceeding while defending the Criminal Action." Mot. to Stay at 5. Specifically, defendants contend that discovery "will inevitably seek to elicit evidence that Defendants engaged in the alleged illegal activity that is the subject of the Criminal Action" and if discovery proceeds, it "will undermine the accused's Fifth Amendment privileges against self-incrimination." *Id.* at 5. Heartbeat of Miami does not oppose defendants' motion to stay, acknowledging that the Criminal Action concerns "some of the same conduct for which Heartbeat seeks civil redress in this case." Pl.'s Resp. at 2.

The question before me is whether staying this civil case pending resolution of the criminal case is in the interests of justice. *See Kordel*, 397 U.S. at 12 n.27. The answer is yes, at least at this time. The defendants have shown that a stay is appropriate because of the overlapping nature of the facts that underpin both this case and the criminal case and the likelihood that discovery will be hampered in the civil case due to the invocation of the

Fifth Amendment privilege.[5] A temporary stay would also preserve judicial efficiency and not produce an unreasonable delay of this action.[6]

Accordingly, the defendants' unopposed request for a stay of this case pending resolution of the criminal proceedings is granted in part.

## IV. CONCLUSION

Defendants have not established that transfer is warranted, but they have set forth sufficient reason to temporarily stay this case. Accordingly, the following is **ORDERED**:

1. Defendants' Motion to Transfer to the Southern District of Florida (Doc. 54) is **DENIED**.

2. Defendants' Unopposed Motion to Stay Proceedings (Doc. 53) is **GRANTED IN PART**. This action is **STAYED** for ninety days or until completion of the trial or other resolution in the Criminal Action, whichever occurs first. If any party can show a need for discovery to preserve evidence that might become unavailable or less effective or demonstrate a similarly

---

[5] Judge Steven D. Merryday, presiding over the other parallel civil case, also granted the defendants' request to stay pending resolution of the criminal case or through the December trial term, whichever is earlier, due to the overlapping nature of the cases and to avoid "potential delay in discovery" and "prejudice to the defendants caused by simultaneously defending both actions. *See* Order at 2–3, *Att'y Gen. v. Freestone*, 8:23-cv-701-SDM-MRM (M.D. Fla. June 5, 2023).

[6] The Criminal Action is set to proceed to trial during the December 2023 trial term. *See* Oral Order, *United States v. Freestone*, 8:23-cv-25-VMC-AEP (M.D. Fla. Aug. 18, 2023).

pressing need for discovery, the party can move file a motion to partially lift the stay to complete the specific discovery request.

3. Within 14 days of the conclusion of trial or resolution in *United States v. Freestone*, 8:23-cv-25-VMC-AEP (M.D. Fla.), or expiration of the 90-day stay, the parties shall jointly move to reopen this case. By the same date, the parties shall jointly file a status report updating the Court on what effect, if any, the criminal proceedings have on this case.

**ORDERED** in Tampa, Florida, on September 20, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge